**EXHIBIT A**

**to**

**DEFENDANTS' MOTION TO DISMISS, AND FOR SUCH OTHER AND FURTHER RELIEF WARRANTED BY PLAINTIFF'S FILING OF MULTIPLE ACTIONS INVOLVING THE SAME SUBJECT MATTER AT THE SAME TIME IN THE SAME COURT AND AGAINST THE SAME DEFENDANTS**

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

**CRA URBAN LLC,**
1640 Rhode Island Avenue, N.W., Ste. 825
Washington, DC 20036              )
                                  )
                                  )
                                  )
        Plaintiff,              )
   vs.                        )
                                  )
**JULIA E. WRIGHT, A/K/A**         )
**JULIA ELIZABETH WRIGHT**         )
5190 Linnean Terrace, N.W.         )
Washington, DC 20008              )     Case No. _____
                                  )
     and              )
                                  )
**PILLAR DEVELOPMENT, LLC**        )
c/o Business Filing, Inc.          )
1015 15th Street, NW, Suite 1000   )
Washington, D.C. 20005            )
                                  )
     Defendants.        )
_____ )

DISTRICT OF COLUMBIA
COURTS
2005 JUN 24 P 5: 15
RECEIVED

### COMPLAINT

    Plaintiff CRA Urban LLC, by its undersigned counsel, hereby sues the defendants Julia

E. Wright and Pillar Development, LLC, and alleges as follows:

### SUMMARY

    1.    This is an action seeking equitable and legal redress from a disgruntled member

of a limited liability company. In particular, Defendant Julia Wright, an attorney with an alleged

background in construction and urban planning, while purporting to be a manager and/or agent

of the Plaintiff company, violated her fiduciary duty to Plaintiff by, *inter alia,* engaging in a

fraudulent and/or deceitful scheme in which she, while acting and/or purporting to act as a

managing member of Plaintiff, diverted company funds for her personal use, advised the Plaintiff

company to consummate transactions without disclosing her conflicting and/or adverse loyalties, damaged and/or stole assets, equipment and proprietary information, wrongfully helped herself to business opportunities and contracts belonging to Plaintiff, and secretly associated with and/or formed an entity intended to directly compete with Plaintiff. Julia Wright carried out her schemes by employing a calculated web of nondisclosure (when she had a duty to disclose), as well as engaging in active misrepresentation, all the while with full knowledge that Plaintiff and its constituent members were acting upon the reasonable assumption that Julia Wright was honest and loyal to Plaintiff.

## THE PARTIES

2.      Plaintiff CRA Urban LLC  ("Plaintiff", "CRA Urban", and/or the "Company"), is a limited liability company duly established under the laws of the Commonwealth of Virginia. CRA Urban (formerly known as Concord Realty Advisors, LLC and CRA Real Estate Services, LLC) has been in continuous existence since June 15, 2000.  CRA Urban was damaged by Defendants' disloyal conduct and deceitful schemes as set forth herein.

3.      Defendant Julia E. Wright ("Wright"), is an individual residing in the District of Columbia and who regularly transacts business in the District of Columbia.  At all relevant times hereunder, Wright was an attorney admitted to practice law in the State of Maryland. Though Wright led Plaintiff to believe she was qualified to practice law in the District of Columbia, Wright's membership in the Bar of the District of Columbia has been suspended for non-payment of dues.

4.      Defendant Pillar Development, LLC ("Pillar"), on information and belief, is a limited liability company organized under the laws of the District of Columbia.

5.      On information and belief, Wright is the managing member, sole member and/or owner of the majority of membership interests in and to Pillar. Alternatively, and/or in addition thereto, Wright and Pillar are *alter egos* of each other.

2

6.      Defendant Wright is an owner of forty-five percent (45%) of the membership interests in CRA Urban.  William N. Herman ("Herman") and Eric T. May ("May") own forty-five percent (45%) and ten percent (10%), respectively, of the remaining membership interests in CRA Urban.  Herman and May are collectively referred to herein as the "Majority Members."

7.      At all relevant times, Herman has been and continues to be the Managing Member of CRA Urban. CRA Urban is an operating company that from time to time, on a project specific basis, engages in certain business opportunities in connection with real estate and other enterprises, whether directly, or indirectly through one or more separately organized and/or owned single-purpose entities.   All business opportunities available to CRA Urban are solely predicated upon the goodwill earned by the members of CRA Urban as well as their professional qualifications and experiences.

## FACTS

8.      Defendant Wright intentionally placed herself in a position of trust and confidence as a manager and/or agent of the Plaintiff company by misrepresenting her skills, qualifications, experience and acumen. Specifically, she purported to be a real estate development professional with approximately 20 years of experience in the acquisition and development of complex and risky urban real estate development projects, in order to intentionally conceal what was, in reality, a skill-set that at best qualified her to act as a construction coordinator.  In addition, Wright touted her expertise as a lawyer who allegedly understood the transactional elements of Plaintiff's business and was familiar with the drafting and negotiation of  legal documents. Wright played on the foregoing false and/or misleading pretenses, together with the additional trust and confidence conferred by her status as an attorney, as a means to induce CRA Urban to trust Wright and admit Wright as a member. Moreover, when CRA Urban became aware of facts which indicated that Wright's active management role was detrimental to the Company's business, Wright made material

misrepresentations concerning her performance of future acts, even though she had no intent or ability to perform them, and further failed to disclose all relevant and/or material information bearing on her role and personal interest in certain transactions.  These lies induced CRA Urban to incur substantial additional liabilities to third parties.

9.      Defendant Wright specifically touted herself as a lawyer, construction manager and urban planner. Within a matter of months, her abusive management tactics, poor work ethic as well as diversion of corporate credit for personal expenses and extravagant shopping sprees, threatened to permanently damage the reputation of Plaintiff and its business goodwill.  Thus, during the course of negotiations to amicably sever the business association between and among the parties, Julia Wright chose to help herself to the unauthorized and unilateral profits and goodwill of multiple "CRA Urban clients" while secretly planning and subsequently operating her own single member "entity"  to directly compete with CRA Urban and receive the misappropriated profits and goodwill.

10.      When she proved incapable of performing her duties as a purported manager and/or member actively participating in the day-to-day business of CRA Urban, Wright devised and carried out a fraudulent scheme in which she organized, persuaded and/or directed Pillar (and likely other third parties), through her position of dual agency on behalf of both Pillar and CRA Urban, to usurp lucrative business rightfully belonging to CRA Urban and steal equipment, office materials and other information and/or materials proprietary to CRA Urban. As part of the scheme, Wright and Pillar did not expect that they would provide any consideration to CRA Urban in exchange for the foregoing. Wright failed to disclose these facts to CRA Urban in breach of her fiduciary duty; and her conduct operated as a fraud or deceit upon CRA Urban.  In addition, Wright secretly and unilaterally secured property and/or further appropriated advantages deriving from her role as a lawyer who frequently advised Plaintiff on transactions relating to the same property and advantages.

11.     Defendant Pillar aided and abetted the foregoing scheme by Wright. On information and belief, Wright used and is continuing to use Pillar to receive and/or conceal profits that rightfully belong to CRA Urban. Wright's knowledge of and substantial assistance to the scheme is imputed to Pillar. Moreover, since the foregoing scheme resulted and/or will result in a material benefit to Pillar and the value of its business, any actual or future purchase or sale of interests in and to the defendant limited liability company are and/or will be tainted by the foregoing fraudulent and/or deceitful acts, practices, and/or courses of business of Defendants as set forth hereunder.

12.     Notwithstanding the Defendants' fraudulent scheme, the minority member and defendant Wright, while occupying a position of trust and confidence as a manager, lawyer and/or agent of CRA Urban, failed to act in the best interests of the Company and in fact acted to the Company's detriment. More specifically, Wright: (a) engaged in wrongful conduct that adversely and materially affected the business of the Plaintiff limited liability company; (b) willfully and/or persistently committed a material breach of the oral operating agreement; and/or (c) was incapable of performing her duties as a member and/or managing member under the articles of organization or oral operating agreement.  In addition, Wright used her background as an attorney as a means to acquire undue influence in and over the Company, while failing to provide the Company with the same advice against herself as she would or should have given the Company regarding a third person.

13.     To redress the damage Defendants have inflicted, and correct the injustice of permitting Defendants to retain their fraudulently obtained monies and subsequent profits reaped therefrom, CRA Urban seeks compensatory and punitive damages. CRA Urban also seeks disgorgement of all ill-gotten gains and/or secret profits Defendants received as a result of their conduct, plus pre and post-judgment interest thereon, and reimbursement of reasonable costs and attorneys' fees.  In addition, to the extent Defendants benefited by virtue of their wrongful

possession of sums subject to disgorgement, as a fiduciary, Plaintiff seeks pre-judgment interest equal to whatever revenues Defendants pocketed as a result of their possession of such funds.

14.    Beginning sometime in January of 2004, and continuing until  November 29, 2004, Wright was titled as a managing member of CRA Urban. During that time, Wright and Herman each were authorized to act as managing members of the Company.  On November 29, 2004, Herman informed Wright that she could not continue in an active management role for the Company, however, she could continue to use her office in the interim as she prepared to move on.  Wright reacted with surprise and told Herman that she did not realize that her problems with the Company were so "serious."  Nevertheless, Wright and Herman amicably discussed the matter and Wright proceeded to engage in negotiations with her Company as to which, if any, clients she could take with her, as well as sale of her membership interest in the Company. Wright continued to access the offices of the Company well into January of 2005, and from time to time continued to participate as she saw fit as a member of the Company.  Wright had voluntarily ceased performing her obligations as purported managing member by the end of 2004, and thereafter elected to absent herself from the office premises.  When the Company became aware that Wright  was continuing to engage in disloyal and improper conduct while holding herself out as an agent of CRA Urban , the Majority Members removed Wright as a managing member of CRA Urban, pursuant to the provisions of  § 13.1-1024(F) of the Virginia Limited Liability Company Act.

15.    On or about January, 2004, based upon Wright's representations regarding her purported business acumen and professional experience in finance and real estate development, Herman, acting in his capacity as the sole member of CRA Urban, was induced to enter into an oral contract with Wright whereby Herman would convey half of his 100% membership interest in the limited liability company to Wright, in consideration of what Herman and Plaintiff reasonably believed to be Wright's professional qualifications, skills, acumen and business

contacts. Shortly thereafter, Wright and Herman orally agreed to modify and/or amend the foregoing agreement in order to admit May as a minority member of Plaintiff CRA Urban, with the respective membership interests as set forth *supra* at ¶ 6. Wright, Herman and May further agreed that Wright and Herman would each be Managing Members of Plaintiff. The foregoing conveyances and/or transfers of membership interests in CRA Urban are collectively referred to herein as the "Membership Contract."

16.    Wright is and was at all relevant times an attorney, and her claimed legal expertise formed a material part of the consideration and benefit the Company expected to receive from Wright's association with the Company – so much so that the Company paid Wright's 2004 dues for the Maryland Bar Association.

17.    Wright frequently advised the Company on legal matters relating to the drafting and negotiation of contracts and other transactions. In this role, at least as early as April 12, 2004, the Defendant Wright prepared a draft written operating agreement to memorialize the foregoing transfers of membership interests in CRA Urban and to further set forth the terms and provisions of the business and management of the limited liability company going forward. On information and belief, the draft operating agreement was prepared on behalf of CRA Urban with the assistance of Kenneth I. Schaner, Wright's husband and an attorney in the D.C. law firm of Swidler Berlin LLP.

18.    In seeking to associate herself with CRA Urban, Wright portrayed herself as someone with considerable business acumen and judgment, including experience in understanding the acquisition and financing of real estate. She represented herself as a real estate professional with 20 years experience. These representations were false and/or calculated to mislead.

19.    By sometime in March, 2004, it became apparent to the Majority Members that Wright was not the savvy real estate development professional that she pretended to be. After

the members of CRA Urban personally interviewed for and presented a project proposal for a prospective client, Service Employees International Union ("SEIU"), a proposal that initially provided for Wright to act as the designated project manager, SEIU would only agree to retain CRA Urban on the condition that Herman and specifically **not** Wright act as project manager. Thereafter, the Company was advised that a chief engineer on the project with SEIU resigned because of Wright's abusive "management" style and his perception that Wright demeaned his ethnicity.

20.     Contrary to her representations of professionalism,  representations that materially induced Plaintiff to associate with Defendant, it increasingly became clear that Defendant's management style relied substantially on intimidation, verbal abuse and threats. Though Wright occupied a position of trust and confidence as a manager and/or agent of the Plaintiff company, Wright's conduct threatened the reputation of CRA Urban and the viability of lucrative ongoing business contracts and expectancies of CRA Urban.

21.     Defendant intentionally created the false impression – an impression that Plaintiff reasonably relied upon to Plaintiff's detriment – that she had the requisite skills and experience to not only exercise good business judgment, but to exercise good business judgment in good faith <u>and</u> solely directed to the best interests of the Plaintiff limited liability company.  In fact, Defendant <u>did not</u> have the requisite skills and experience to exercise good or reasonable business judgment. Indeed, to the extent she exercised any business judgment, it was done so for her own selfish gain, to the detriment of the Plaintiff.

22.     Approximately four months after entering into the Membership Contract, defendant Wright's lack of professionalism, dedication and questionable work ethic  increasingly interfered with the efforts of the Majority Members to build the business of CRA Urban. Wright repeatedly failed to attend to CRA Urban business until 10 or 11 a.m. while simultaneously finishing her business day by 3 or 4 the same afternoon.

23.     Though Wright occupied a position of trust and confidence as a manager and/or agent of the Plaintiff company,  Wright diverted CRA Urban monies for personal use. For example, on one occasion, Wright used a Company American Express card to incur over ten thousand dollars in unauthorized personal charges for, among other things, round-trip airline tickets for herself and an unidentified male companion "HAYS/B" from Washington Dulles to San Juan, Puerto Rico and Saint Martin in the Caribbean, as well as extravagant purchases of items listed as "Fall Leather," Hugo Boss", "Men's Clothing" and "Casual Hosiery" from Saks Fifth Avenue and Barney's of New York.  Because of Wright's diversion of CRA Urban monies, the Company had insufficient funds to make distributions pursuant to the accounting plan adopted upon Wright's recommendation. In order to pay for Wright's personal spending spree on the Company account, the Company was forced to distribute additional money to pay Wright's bill and delay monthly distributions to the Majority Members for 30 days.  Wright's diversion of CRA Urban monies caused the Company to suffer a cash crunch and incur debt that it would not have incurred but for Wright's conduct.

24.     Prior to the diversion of CRA Urban monies set forth above, Wright advised the Company that for tax reasons, the Company should treat payments to her and the other members of the Company as monthly distributions instead of salary or compensation. While Wright stated that she had to have distributions because she could not afford to pay taxes, she also led the Company to believe that this practice was in the best interest of the Company. In fact, the distribution method she urged, and the Company followed based upon her advice, resulted in additional tax liability for the Company and the Majority Members. When confronted about her diversion of Company funds, Wright claimed that she needed to use the CRA Urban credit in order to conceal her finances and activities from her purportedly estranged husband who had allegedly agreed to pay her taxes.  As such Wright gave business and tax advice to Plaintiff based solely on her personal interest, and failed to provide the Company with the same advice

against herself as she would or should have given the Company had she not been acting out of self-interest to the detriment of the Company.

25.    The Majority Members recognized that Wright's conduct conflicted with and threatened the Plaintiff's business plan and the viability of the Company itself.  Wright generated no new business for CRA Urban during the few months she was showing up in the Company offices -- the Majority Members were exclusively responsible for bringing in numerous paying and prospective projects, including those she stole. And her conduct was interfering with the ability of the Company to benefit from the paying projects it already had. Thus, the Company (in the reasonable business judgment of the Majority Members) decided that any continued actual or implied authority of the minority member Wright to act as a manager, officer, agent or representative for the Company, would not be in the best interests of the Company and would in fact be a detriment to the Company.

26.    On November 26, 2004, after she was aware of the serious and mounting concerns of the Majority Members, Wright sought sympathy from Herman and offered a litany of excuses. Wright stated in a Company email that things were "difficult" for her due to, among other things, alleged marital problems and serious financial pressures. Aware of her mounting deficiencies *vis a vis* CRA Urban and her role as a managing member, Wright apologized for her inability to be emotionally "together" and promised to "pull it together," further pleading for "understanding" and begging for "compassion and friendship."

27.    On or about the latter part of November of 2004, CRA Urban, acting through its Majority Members, advised Wright that the Company had determined that she could not continue in her role as a manager and/or actively participating member. As a member holding at best 45% of the interests in the Company, Wright had and has no right or expectancy to an active manager role where, as here, no operating agreement between and among the parties provided to the contrary. Nevertheless, the Majority Members decided that it was in the best interest of the

Company to arrive at a mutually acceptable disassociation agreement with Wright, whereby the Company and/or Majority Members would purchase Wright's membership interest and thereby allow Wright to return to the *status quo ante*. Thus, the Company engaged in negotiations with Wright over a number of weeks in this regard and did so in the utmost good faith; all the while Wright was taking steps to carry out her fraudulent schemes.

28.     Up through the first week of December, 2004, Wright and the Majority Members amicably negotiated terms by which Wright could disassociate herself from the Company while retaining some clients of CRA Urban and the Company could buy her out of her membership interest. Because Wright occupied a position of trust and confidence as a lawyer, manager and/or agent of CRA Urban, she was aware that the Company was set to move forward on the closing of a major real estate development project in a venture with other entities. Herman informed Wright that the Company and the Majority Members would refrain from closing on a certain transaction (which would result in considerable liabilities to the Company), until such time as Wright resolved all outstanding matters with the Company and its Majority Members. Even though Wright had secretly consulted with her own counsel by that time, and she knew that CRA Urban had sought and received legal advice from her, Wright assured Herman that they were not far apart and that an agreement was imminent. Wright did not disclose the fact that she was working at cross purposes to the Company. Thus, Wright fraudulently concealed her interests, motives, and intent to perform future acts, and further failed to disclose all relevant and/or material information bearing on her role and personal interest in inducing the Company to go forward and not delay pending resolution of her claims. These lies and/or material omissions induced CRA Urban to incur substantial additional liabilities to third parties.

29.     Wright purported to negotiate the terms of her resignation and buy-out with the Majority Members and  simultaneously advanced her fraudulent scheme to help herself to CRA Urban assets, equipment, clients, contracts and opportunities. Despite continuing to access CRA

Urban's offices and taking advantage of the Majority Member's good faith, on January 11, 2005, Wright asked Herman, in writing, to inform CRA Urban's clients that she had "relocated."

30.     Beginning sometime in December of 2004 and continuing at least through February of 2005, Wright persisted in falsely representing to third parties that she had authority to act as a managing member of CRA Urban and/or otherwise was an agent thereof. As an attorney and sometime member of the bar of this Court, Wright knew or should have known that she had no authority to act as manager or agent for CRA Urban.

31.     On or about October 25, 2004 (approximately a month before her departure), Wright drafted a legal instrument purporting to a broker representation agreement for a potential CRA Urban client Anthrotronix.  In fact, Wright does not have a real estate brokerage license. Herman was at all relevant times the broker of record for the Company, and Wright had no authority to hold herself or the Company out as licensed real estate brokers. On information and belief, Wright and/or Pillar usurped this business opportunity for their own gain.

32.      During the same time period where Wright falsely held herself out to third parties as a managing member of CRA Urban and/or otherwise was an agent thereof, on February 24, 2005, the Defendant Wright revealed that she had secretly formed and/or associated with the Defendant Pillar  in order to directly compete with CRA Urban, LLC.

33.     During the same time period where Wright falsely held herself out to third parties as a managing member of CRA Urban and/or otherwise was an agent thereof, on February 24, 2005, the Defendant Wright revealed that she was using a previously undisclosed entity Pillar to "perform services" for German Marshall Fund of the United States -- a business opportunity belonging to CRA Urban.   Wright's disloyal and deceitful theft of the benefits and property rightfully belonging to CRA Urban provided by the German Marshall Fund contract has damaged CRA Urban in an amount of at least $9,263.00 per month, damages that continue to mount and will do so through at least December of 2005.

34.    While Wright continued to falsely hold herself out to third parties as a managing member of CRA Urban and/or otherwise an agent thereof, Wright usurped and stole other business opportunities belonging to CRA Urban. These CRA Urban opportunities include ongoing services agreements with: (a) The American Society of International Law  ($3,767.00 per month); and (b) Credit Union National Association ($2,898.26 per month).

35.    Despite written demand, Ms. Wright has failed to provide a  full accounting of all of the business she has misappropriated from CRA Urban, whether for her own personal benefit or for the benefit of the defendant Pillar – an organization Wright intentionally associated with and/or formed to directly compete with CRA Urban.

36.    While Wright continued to falsely hold herself out to third parties as a managing member of CRA Urban and/or otherwise an agent thereof, Wright was in fact competing with CRA Urban, using confidential and/or inside information, assets, office equipment, know-how, goodwill and business opportunities rightfully the property of CRA Urban.  At no time did CRA Urban or either of the Majority Members consent to Wright's taking of a personal interest in the subject matter of her role for the Company.

37.    Indeed, at the same time Wright was competing with CRA Urban, and months after the Majority Members advised Wright that she could not continue as a manager and/or actively participating member, as late as late February, 2005, Wright improperly gained access to the Company banking records and, on information and belief, solicited and obtained inside financial information from representatives of Citibank FSB.  Wright knew or should have known that she was not authorized to snoop through the electronic banking records of the Company after its Majority Members advised Wright that she could not continue as a manager and/or actively participating member. On information and belief, Wright was seeking and obtaining confidential information about CRA Urban's dealings with legal counsel and possible payments to Company lawyers in connection with Wright's efforts to dissolve the Company by instituting

litigation against Herman and May individually. On information and belief, Wright has employed and is continuing to employ other unauthorized methods of seeking and obtaining inside and/or confidential information relating to CRA Urban's business.

38.     As a fiduciary holding a position of trust and confidence as a sometime manager and/or agent of the Plaintiff company, while scheming to, and subsequently in fact competing with CRA Urban, using confidential and/or inside information, assets, office equipment, know-how, goodwill and business opportunities rightfully the property of CRA Urban, Wright was wrongfully serving two masters. Thus, Wright took advantage of her fiduciary relationship with Plaintiff to secretly profit, and caused Plaintiff to lose business opportunities and money by not looking out for the best interests of the Company. On information and belief, Wright commingled the foregoing ill-gotten gains into her personal bank account and alternatively, or in addition thereto, into account(s) used to finance the organization and operation of Pillar, and/or used to finance her personal litigation against Herman and May.

39.     As a party to the Membership Agreement, Wright undertook a duty of good faith and fair dealing in her performance on behalf of CRA Urban. Nevertheless, by engaging in the conduct set forth herein, Wright breached this covenant of good faith and fair dealing by engaging in subterfuges, evasion, and bad faith. As an attorney and purported real estate professional, Wright's obligation of fair dealing in contracting to be admitted as a member in CRA Urban required more than honesty (which was not provided). Wright breached the covenant of good faith and fair dealing by attempting to evade the spirit of the bargain, demonstrating a nearly complete lack of diligence, slacking off, willful rendering of incompetent performance, willful delay, and/or intentional interference with or failure to cooperate in the performance of the other parties to the Agreement (the Majority Members).

## COUNT I
### (Fraud - Misrepresentation)

40.     Plaintiff incorporates the allegations of paragraphs 1- 39.

41.     By virtue of the conduct described above, Defendants knowingly, willfully, and maliciously made false representations of material fact to CRA Urban.

42.     Defendants made false representations of material fact to CRA Urban with the intent to deceive CRA Urban, injure CRA Urban's professional reputation, and to further Defendants' own financial and personal interests.

43.     CRA Urban reasonably relied upon Defendants' false representations, including but not limited to representations with respect to the professionalism, expertise, intentions, and/or qualifications of defendant Julia Wright.

44.     As a result of CRA Urban's reasonable reliance upon Defendants' misrepresentations, CRA Urban incurred significant financial losses, a result that was foreseeable and intended by Defendants.

WHEREFORE, Plaintiff respectfully requests:

(a).     Judgment against Wright for compensatory damages in the amount of Two Hundred Thousand Dollars ($200,000.00), plus interest and costs, punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00), and reasonable attorney's fees; and

(b).     Such other and further relief as justice may require.

## COUNT II
### (Breach of Fiduciary Duty)

45.     Plaintiff incorporates the allegations in paragraphs 1- 44.

46.     The defendant Wright, as Plaintiff's managing member, employee, consultant, servant and/or agent of Plaintiff CRA Urban, was and is accountable to Plaintiff as a fiduciary. As a fiduciary, this defendant owed and continues to owe Plaintiff a duty to act for the benefit of Plaintiff's business with loyalty and good faith, without any self-interest or self-dealing.

47.     Wright breached these duties by acting for her own profit at the expense of CRA Urban by, *inter alia*, engaging in active and/or constructive fraud for the purpose of misappropriating CRA Urban monies, assets and business opportunities for her own personal profit

48.     Wright also breached her fiduciary duties to Plaintiff by covertly scheming with Pillar, and/or as yet unknown third parties to directly compete with Plaintiff while using business assets, confidential and proprietary information of Plaintiff and business opportunities of Plaintiff.   On information and belief, Wright did so prior to the termination of her role as manager and/or agent of Plaintiff.

49.     By willfully misappropriating business assets, confidential and proprietary information of Plaintiff and business opportunities of Plaintiff for her own personal profit and by doing so with intent to damage the business of Plaintiff and the goodwill of its clients and customers, Wright breached the duty of loyalty owed to Plaintiff as its manager and/or agent.

50.     Defendant Wright seeks to obtain an unfair advantage in the marketplace, and boost her personal fortune on the back of the value and goodwill of Plaintiff and its business.

51.     Defendant Wright seeks to benefit at Plaintiff's expense by profiting from business assets, confidential and proprietary information, and/or business opportunities of Plaintiff, obtained via her abuses of the fiduciary duties owed to Plaintiff.   These are ill-gotten profits, which were and continue to be, held in constructive trust by her and Pillar for the benefit of Plaintiff.

52.     Such breaches of fiduciary duty have caused CRA Urban damages.   For example, Wright's misconduct has caused CRA Urban to lose income, business and development opportunities in an amount of at least approximately One Hundred and Twenty Thousand Dollars ($120,000.00) as of the date hereunder – damages that will continue to mount going forward.

53.    The concealment and non-disclosure of plans to organize and operate Pillar to directly compete with Plaintiff and her self-help in taking business for herself and/or Pillar violated the fiduciary duties of Wright and damaged Plaintiff in an amount at least as much as the profit(s) and/or benefit(s) received by her.

54.    Wright breached her fiduciary duty intentionally with malice, and/or with reckless disregard for CRA Urban's rights by acting for her own economic benefit at the expense of CRA Urban.  In her breach, Wright acted willfully and contrary to the best interest of CRA Urban.

55.    By virtue of Wright's breaches of her fiduciary duties owed to Plaintiff, Plaintiff suffered damages from Wright's wrongful conversion of assets and equipment in an amount of approximately Twelve Thousand Dollars ($12,000.00).

WHEREFORE, Plaintiff respectfully requests:

(a).    That this Court issue an Order that the defendants provide a prompt and full accounting as well as all information and documentation concerning the organization, day-to-day operation, management, structure and ownership of Pillar, as well as the scope and extent of all use of the Plaintiff's information, assets, office equipment, know-how, goodwill and business opportunities;

(b).    Judgment against all of the defendants, jointly and severally, for compensatory damages in the amount of Two Hundred Thousand Dollars ($200,000.00), plus interest and costs, punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00), and reasonable attorney's fees; and

(c).    Such other and further relief as justice may require.

## COUNT III
### (Constructive/Equitable Fraud)

56.     Plaintiff incorporates the allegations in paragraphs 1- 55.

57.     Wright accepted the role of managing member of CRA Urban.  By this act, Wright falsely represented that she intended and would be able to manage CRA Urban's business properly and with its best interests in mind.   Wright never intended to do so; instead, she commenced and continued to act as managing member as a false pretext to further her own interests, as well as those of others including Pillar.

58.     At all relevant times, Wright intended to use and manipulate CRA Urban so as to benefit herself.  This intention rendered Wright incapable of properly acting in CRA Urban's best interest and made it impossible for Wright to operate CRA Urban in CRA Urban's best interest.  Wright took on the obligation to manage CRA Urban without disclosing this intent, or the resulting conflict.

59.     Moreover, by entering into an oral agreement to assume a position of trust and confidence as a manager and/or agent of the Plaintiff company, Wright was charged with the obligation to act with loyalty to, and in the best interests of the Company as a fiduciary.

60.     Wright breached her fiduciary duty intentionally, with malice, and/or with reckless disregard for CRA Urban's interests by (without limitation): engaging in abusive management tactics; demonstrating a shoddy and/or inattentive work ethic; using Company credit for personal expenses and extravagant shopping sprees; engaging in conduct that threatened to permanently damage the reputation of Plaintiff and its business goodwill; misappropriating business assets, confidential and proprietary information of Plaintiff and business opportunities of Plaintiff for her own personal profit; and/or scheming to, and subsequently in fact competing with CRA Urban, using confidential and/or inside information, assets, office equipment, know-how, goodwill and business opportunities rightfully the property of CRA Urban.

WHEREFORE, Plaintiff respectfully requests:

(a).     Judgment against Wright for compensatory damages in the amount of Two Hundred Thousand Dollars ($200,000.00), plus interest and costs, punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00), and reasonable attorney's fees; and

(b).     Such other and further relief as justice may require.

## COUNT IV
### (Unjust Enrichment)

61.     Plaintiff re-alleges paragraphs 1 through 60 as if fully set forth herein.

62.     By and through their above described tortious conduct, the Defendants benefited from their own wrongs.

63.     By and through their above described tortious conduct, defendants were able to artificially enhance and/or maintain at an artificially inflated level profits to and the value of their business and/or personal fortune.

64.     Defendants benefited at Plaintiff's expense by profiting and/or attempting to profit from using business assets, confidential and/or proprietary information of Plaintiff and business opportunities obtained via breaches of fiduciary duty, deceit, conversion, legal and equitable fraud, by diverting such assets, information and opportunities that would have gone to Plaintiff to their own use and by profiting from possession and use thereof.

65.     Defendants benefited from such conduct.  They did so knowing the nature of the benefits, and while fully aware that they had been wrongfully obtained. To allow Defendants to retain these benefits would be unjust.

WHEREFORE, Plaintiff respectfully requests:

(a).     Judgment in favor of Plaintiff, and jointly and severally against Wright and Pillar awarding Plaintiff restitution and/or disgorgement of benefits unjustly obtained by the

defendants Wright and Pillar in the amount of Five Hundred Thousand Dollars ($500,000.00), plus interest and costs, and reasonable attorney's fees; and

(b).    Such other and further relief as justice may require.

## COUNT V
### (Civil Conspiracy)

66.    Plaintiff incorporates the allegations in paragraphs 1 - 65.

67.    Wright and Pillar each conspired to strip CRA Urban's assets out of CRA Urban, using Wright's management authority in CRA Urban to this end, even after Wright unilaterally and voluntarily stopped performing as a managing member in any respect.  Each of these defendants planned, participated in, facilitated and benefited from the conspiracy to this end. Each is responsible for overt actions, described above, taken by one or more of their number in furtherance of this conspiracy.

68.    As a result of the above described conspiracy, CRA Urban has been damaged.  As a result of the above described conspiracy, each of the defendants and the conspiracy as a whole has benefited illegally and unjustly.

WHEREFORE, Plaintiff respectfully requests:

(a).    Judgment in favor of Plaintiff, and jointly and severally against Wright and Pillar for compensatory damages in the amount of Two Hundred Thousand Dollars ($200,000.00), plus interest and costs, punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00), and reasonable attorney's fees; and

(b).    Such other and further relief as justice may require.

Respectfully submitted,

this 24 day of June, 2005

Roger C. Simmons (D.C. Bar No. 12195)
Adam H. Oppenheim (D.C. Bar No. 462581)
GORDON & SIMMONS, LLC
603-B West Patrick Street
Frederick, Maryland 21701
(301) 662-9122 (Tel.)
(301) 698-0392 (Fax)

Counsel for Plaintiff CRA Urban, LLC

Z:\CRA Urban\Complaint_CRAUrban.doc