**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| **JULIA E. WRIGHT**                            ) | |
| ) | |
| **Plaintiff,**             ) | |
| ) | |
| **v.**                      ) | **Civil Action No. 05-01179** |
| ) | **The Honorable Ricardo M. Urbina** |
| **WILLIAM N. HERMAN,**          ) | |
| **ERIC T. MAY and URBAN**          ) | |
| **REALTY ADVISORS, LLC**          ) | |
| ) | |
| **Defendants.**          ) | |
| _____) | |

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

      Plaintiff, Julia E. Wright ("Plaintiff" or "Wright"), seeks a declaration of her contractual rights under CRA Urban Venture I LLC's (the "Venture") operating agreement (the "Venture's Operating Agreement"), and other relief. Plaintiff and Defendants William N. Herman ("Herman") and Eric T. May ("May") (collectively, the "parties") are members of the Venture and the sole signatories to the Venture's Operating Agreement. The Venture was formed to allow the parties herein to participate as equity investors in a project to acquire a former D.C. public school building and convert it into condominium units (the "Gage School Project" or the "Project").

      Defendants Herman and May have violated Plaintiff's contractual rights under the Venture's Operating Agreement by refusing to let her inspect the books and records of the Venture, refusing to permit her to participate in "Major Decisions," as defined by the Venture's Operating Agreement, and by refusing to let her participate in the implementation of the Gage School Project.

Defendants move to miss the Complaint on the basis of three faulty arguments:

First, Defendants argue that this action should be dismissed because it is duplicative of Plaintiff's pending lawsuit against Herman, May and their limited liability company -- Urban Realty Advisors, LLC (Civil Action No. 050324 (RMU)) ("Wright I"). But Defendants ignore the fact that Plaintiff is asserting two different sets of claims in her two actions.  In Wright I, Plaintiff seeks redress against Herman and May for wrongfully ousting her from their business – CRA Urban – and for wrongfully dissolving that business de facto.  In this action ("Wright II"), Plaintiff seeks redress because Herman and May have violated her contractual rights under the Venture Operating Agreement – entered into by the parties to enable their joint equity investment in the Gage School Project.

Second, Defendants argue that this Court lacks subject matter jurisdiction because the Venture is an indispensable party under Fed. R. Civ. P. 19(a), and that adding it would destroy this Court's diversity jurisdiction.  As we demonstrate below, Defendants fail to satisfy the requirements of Rule 19.

Third, Defendants argue that Plaintiff fails to state a claim because she does not have a right to sue for violation of her rights under the Venture's Operating Agreement, and because there is no underlying wrongful act supporting Plaintiff's conspiracy claim. But as we show below, Plaintiff states cognizable breach of contract claims.  Further, Defendants' wrongful conduct is actionable under the District of Columbia limited liability company statute, and thus satisfies the wrongful act element in a civil conspiracy claim.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     CRA URBAN AND WRIGHT I

In January 2004, Wright and Herman agreed to form an enterprise that would

manage and develop real estate projects.  Although they used the vehicle of an existing

Virginia limited liability company ("LLC") to conduct their enterprise, they decided, as

between themselves, that they would operate internally as a partnership. After several

name changes, their LLC was eventually named CRA Urban, LLC ("CRA Urban").  In

May 2004, at Herman's suggestion, Wright and Herman brought in May as a partner with

a 10% interest, with Wright and Herman each retaining a 45% interest.

By the Fall of 2004, CRA Urban had several lucrative project management

contracts and potential business opportunities.  However, in September 2004, Herman

and May began excluding Wright from CRA Urban meetings and withholding

information relating to their business.  Then suddenly, on November 29, 2004, without

any legal basis or justification, Herman, acting on behalf of himself and May, told Wright

that he had unilaterally decided to terminate their partnership.

Plaintiff filed Wright I on February 14, 2005 seeking legal redress as a result of

Herman's attempt to terminate her interest and rights in CRA Urban. After amending her

complaint once as a matter of right, and then amending and supplementing her complaint

pursuant to Judge Urbina's Memorandum Opinion and Order, dated July 19, 2005,[1]

("Mem.."), Plaintiff seeks the following relief in Wright I: a declaration of partnership

rights (Count I); an accounting and settlement of accounts (Count II); damages for

---

[1] Judge Urbina's rulings addressed Defendants' Motion to Dismiss the First Amended Complaint, Plaintiff's Motion to Amend and Supplement the Complaint, and Defendants' Opposition to Plaintiff's Motion to Amend and Supplement the Complaint.  The foregoing briefing was completed on May 25, 2005.

4

Herman's and May's breaches of their fiduciary duties (Count III); a declaration of her rights under Virginia's limited liability company statute (Count IV); damages against Herman and May for violating Wright's legal rights under Virginia's limited liability company statute (Count V); dissolution and winding up of CRA Urban pursuant to Virginia's limited liability company statute (Count VI); damages against Herman and May for conversion as a result of their attempt to transfer CRA Urban's assets to their newly-formed LLC – Urban Realty Advisors, LLC ("Urban Realty") (Count VII); damages against Herman, May and Urban Realty for civil conspiracy as a result of Herman's and May' attempts to exclude Wright from CRA Urban's business and to transfer CRA Urban's valuable contracts to Urban Realty (Counts VIII-IX); and claims for equitable relief as a result of the wrongful acts of Herman, May and Urban Realty in attempting to destroy Wright's valuable interest in CRA Urban (Count X).

## II.    THE GAGE SCHOOL PROJECT AND WRIGHT II

### A.    The Project

This action does not involve Plaintiff's claims for relief as a result of her wrongful ouster from CRA Urban.  Wright II concerns Plaintiff's valuable equity interest in a real estate development project established by the parties before she was ousted from CRA Urban.  In June 2004, CRA Urban was selected by The Howard University to develop a former D.C. public school building known as "The Gage School," located at 2035 Second Street, N.W., Washington, D.C.   The parties' plan was to convert the former school building into condominium units.  The project (the "Gage School Project") would contain approximately 93 units, which were to be marketed and sold, subject to reservation rights in favor of Howard University community members, to the general public.

**B.**    **LLC's Formed to Implement the Project**

The parties' plan was to be equity investors in the Gage School Project through a new entity. To effectuate their plan, they formed CRA Urban Venture I LLC (the "Venture"), a D.C. limited liability company. The parties also executed an Operating Agreement for the Venture (the "Venture's Operating Agreement"), dated November 5, 2004 (Exhibit "A" to the Complaint herein). Pursuant to the Venture's Operating Agreement, Wright, Herman and May each had a 1% Class A ownership interest and a 32 1/3 % Class B ownership interest in the Venture. Only Class A members have the right to vote on "major decisions" of the Venture. Venture Operating Agreement, Section 5.1(b).

After finding another equity partner to put most of the capital for the project (in addition to their own equity investments), the parties formed an LLC – "Gage School Holdings, LLC" (the "Owner"), a Delaware LLC, with their new equity partner – HUI, LLC (the "Investor"). The Venture and the Investor executed an Operating Agreement (the "Owner's Operating Agreement") (Exhibit "B" to the Complaint) for the Owner. The Owner's Operating Agreement gives the Venture limited powers to oversee the development of the Gage School Project, and broad supervisory rights to the Investor to ensure that the Venture is properly performing its duties in accordance with the Owner's Operating Agreement.

The parties also formed a D.C. LLC named "Gage School, LLC" (the "Title Holder") to hold title to the Gage School Project for the benefit of the Owner and to act as the borrower for the Project.

After the foregoing arrangements were made, the Owner purchased the Gage School from Howard University and vested title in the Title Holder.  Acquisition funds were obtained, in large part, from The Columbia Bank (the "Bank") in the principal amount of $2,250,000, which was loaned to the Title Holder.  In addition, Wright, Herman and May each made a net deemed capital contribution of $75,000, and the Investor made a capital contribution of $1.3 million.  After payment of the purchase price and other closing costs, the Owner had approximately $1 million available to pay the Project's pre-development costs and to prepare the Project so that a building permit could be issued and a construction loan advanced.

In addition, the Owner and CRA Urban entered into a Development Services Agreement ("DSA") pursuant to which the Owner retained CRA Urban to provide all development management services for the Gage School Project.  (The DSA is Exhibit "J" to the Owner's Operating Agreement, which is Exhibit "B" to the Complaint herein.) The DSA delegates to CRA Urban all duties relating to the construction, development, conversion and completion of the Gage School Project, and the marketing and sale of all condominium units in the Project.

**C.**     **Herman's and May's Wrongful Acts**

After the Gage School Project got underway, Herman and May committed a series of wrongful acts that violate Wright's contractual rights under the Venture's Operating Agreement.  These wrongful acts erupted on April 27, 2005, more than two months after Wright I was filed.  On that date, Herman and May, through counsel, sent a letter to Wright's counsel demanding that she advise them by close of business that day whether she objected to the Venture borrowing an additional $400,000 to $600,000 from

the Bank, which sum would be proportionately guaranteed by Wright.  Wright, through

counsel, responded to the foregoing request on the same day by requesting information

relating to the Gage School Project that would help her decide whether or not to object to

the loan increase.  Wright's request for information included, among other things, access

to the Venture's books and records pursuant to Section 8.1(a) of the Venture's Operating

Agreement and all documentation provided to the Bank in support of the increased loan

application.[2]

### 1.      Denial of Informational Rights

Herman and May refused to provide Wright access to the Venture's books and

records, but rather contended, through counsel, that her information rights were limited to

the more limited informational rights accorded by D.C. Code § 29-1022.[3]  Further, in

response to Wright's request for all documentation provided to the Bank in support of the

increased loan, Herman and May falsely represented that were no loan documents other

than those provided.  (The only loan documents provided were the various loan

documents required by the Bank to memorialize and secure a $600,000 increase in its

loan for use in the Gage School Project.)  Wright subsequently contacted the Bank and

learned, contrary to the foregoing representation, that Herman and May had, in fact,

---

[2] Section 8.1(a) of the Venture's Operating Agreement states as follows:

> The books and records of the Company shall be maintained by the Managing Member on
> behalf of the Company and shall be available for examination by any Member, or his
> duly-authorized representatives, during regular business hours.

[3] Section 29-1022 of D.C.'s limited liability company statute contains a very limited list of documents that
an LLC must keep at its principal office.  These documents do not include all of "the books and records"
(emphasis added) of the Venture.  The documents required to be maintained by the D.C. statute are as
follows: a current list of the names and addresses of all members; the articles of organization, the certificate
of organization, and all articles of amendment and certificates of amendment; copies of its tax returns for
the last three years; copies of its operating agreement; and, unless stated in its operating agreement, the
amount of cash and agreed value of the property or services contributed by each member, the times when
any additional contributions are to be made, the rights of members to receive distributions, and the events
which would trigger the dissolution of the LLC.

supplied the Bank with an updated budget, a "Monthly Development & Sellout Analysis,

dated April 22, 2005, and a "Predevelopment Sources & Uses – Additional Funding

Request."  None of these documents was supplied by Herman and May to Wright, despite

her repeated request for precisely this type of information.  Herman's and May's refusal

to give Wright access to the Venture's books and records is a clear breach of Wright's

informational rights under the Venture's Operating Agreement

## 2.    Denial of Right to Participate in "Major Decisions"

Herman and May have consistently wrongfully excluded Wright from

participating in making major decisions on behalf of the Venture.

Section 5.1(b) of the Venture's Operating Agreement provides, inter alia, as

follows:

> **Major Decisions Requiring Majority Approval.**
> Notwithstanding Section 5.1(a), decisions with regard to each of the
> matters identified in this Section 5.1(b) (each such decision a "**Major
> Decision**" or, collectively, "**Major Decisions**") shall require the consent
> of a Class A Majority.  Those decisions on behalf of the Company
> constituting Major Decisions are the following:
>
> (i)      (a) to borrow money for Company purposes, whether
> secured or unsecured (including refinancing, consolidating, extending or
> modifying any indebtedness of the Company, whether now existing or
> hereafter acquired); (b) to execute promissory notes and other evidences of
> indebtedness (including promissory notes and other documents containing
> confessed judgment provisions) on behalf of the Company; (c) to
> mortgage or subject to any security device all or any portion of the
> Company's assets or properties; (d) or to guaranty the obligations of any
> other Person; or (e) to raise additional capital under the circumstances
> described in Section 3.4 hereof);

The Operating Agreement then lists 22 other decisions that are included in the list of

"Major Decisions."

Herman and May have made at least one "Major Decision" without permitting Wright to participate in the decision-making process, namely, their decision to increase the principal loan amount by $600,000 and a proposed proportionate increase in the amount of Wright's personal loan guaranty to the Bank.  While Wright does not dispute that, collectively, Herman and May, together, representing two of the three Class A members of the Venture have the power to make the aforesaid decision (so long as they act reasonably, in the best interests of the Venture and the Owner and without being motivated either by animus towards Wright or a conflict of interest), the "Majority Decision" provision of the Operating Agreement plainly contemplates that there is to be a deliberative process in which <u>all</u> voting the members are to participate in a meaningful manner.  The notion that two members having sufficient votes to constitute a majority could make "Major Decisions" under Section 5.1(b) without permitting the third member even to know that a Major Decision is being considered, much less to participate meaningfully in the decision-making process, would make a mockery of this provision. This cannot and was not the intent behind Section 5.1(b).

**3.    Denial of Right to Participate as a
"Key Person" in the Gage School Project**

The Venture's Operating Agreement states at Section 5.1(d) that its members "authorize and approve of the execution and delivery by the Managing Member, on behalf of the Company, of that certain Operating Agreement of Gage School Holdings, LLC, in the form attached hereto as Exhibit A."  The Venture's Operating Agreement further states as a "Rule of Construction" at Section 1.2(vi) that "[w]hen any reference is made in this document or any of the schedules or exhibits attached hereto to the Agreement, it shall mean this Agreement, together with all other schedules and exhibits

attached thereto, as though one document." Thus, the provisions of the Gage School Holdings' Operating Agreement are, in effect, part of the Venture's Operating Agreement.

Herman and May have wrongfully excluded Wright from participating as a "Key Person" responsible for executing and completing the Project. Article 3.02(b) of the Gage School Holdings Operating Agreement states:

> Operator and the Key Persons shall devote the amount of time and resources necessary for the effective and efficient performance of the duties and obligations of the Operator hereunder, including without limitation the duties and obligations of the Operator as Manager.

Article 15 of the Gage School Holdings' Operating Agreement defines "Key Persons" as "each of William Herman, Eric May and Julia Wright (or any replacement for any of them approved by the Investor in the exercise of its sole discretion)."

Herman and May have prevented Wright from fulfilling her role as a "Key Person" by not allowed her to participate as a developer in the Project. Thus, because the Gage School Operating Agreement is a part of the Venture's Operating Agreement, Herman's and May's refusal to let Wright serve as a "Key Person" in the Gage School Project constitutes a violation of Wright's contractual rights under the Venture's Operating Agreement.

### 4. Wrongful Transfer of CRA Urban's Rights Under the DSA

Shortly after Plaintiff filed Wright I, Herman and May formed Defendant Urban Realty, and then purported to transfer to it all of CRA Urban's valuable real estate management and development agreements, including the DSA. As discussed above, the DSA provides that CRA Urban is the entity responsible for carrying out the development of the Gage School Project. Under the DSA, CRA Urban was to receive a pre-

development fee of $15,000 per month and development fee of four percent of the total hard and soft project costs (or a sum approximating $1 million). See DSA, Section 5(a). This transfer was made without Wright's consent, without consideration to CRA Urban and in violation of Herman's and May's duties to Wright under the Venture's Operating Agreement.[4]

### 5. Herman and May Have Committed Events of Default Under the DSA

The DSA incorporates a project schedule (Exhibit "C" to the DSA) which is already substantially behind. For example, Gage School renovation and new building construction was supposed to commence by April 29, 2005. On information and belief, neither renovation nor construction has commenced. By missing these and other Project dates set forth in the DSA, Herman and May (and their entity, Urban Realty, as the supposed assignee of CRA Urban under the DSA) have breached the DSA, and thereby given the Investor the right to terminate and remove CRA Urban (or Urban Realty) as the project manager. See, DSA Sections 4(f) and 9(a). This default is also a default of Herman's and May's obligations under the Venture's Operating Agreement in light of the DSA's incorporation by reference into that Agreement. By putting the Project into a default position, Defendants have compromised Plaintiff's investment in the Venture, thus violating Plaintiff's rights under the Venture's Operating Agreement.

### D. Wright II

To seek redress of the foregoing breaches of their contractual obligations to Wright under the Venture's Operating Agreement, Wright filed the instant action on June

---

[4] The DSA is Exhibit "J" to the Gage School Holdings Operating Agreement, which, in turn, is Exhibit "A" to the Venture's Operating Agreement. Hence, the DSA is incorporated into the Venture's Operating Agreement.

13, 2005.  At the time of filing, Plaintiff's counsel completed a "Notice of Designation of Related Civil Cases Pending in This or Any Other United States Court" by indicating in the appropriate box that this case "involves common issues of fact" with  Wright I. Accordingly, the case was assigned to Judge Urbina so that Wright I and II could be dealt with together by one Judge.

## ARGUMENT

### I.     WRIGHT II IS NOT DUPLICATIVE OF WRIGHT I

#### A.     The Legal Standard

Defendants argue that Wright II must be dismissed because that it involves "the same subject matter at the same time in the same Court and against the same defendants." Defendants' Mot. at 5.   But as we show below, Defendants' own cases demonstrate, this is not a correct statement of the applicable rule.[5]  The applicable legal rule is that a second lawsuit should be dismissed if it duplicates the claims in the first action.  The rule was clearly stated in Empagran S.A. v. F. Hoffman-LaRoche, Ltd., 2001 U.S. Dist. LEXIS 20910 at *21 (D.D.C. June 7, 2001) ("After reviewing the allegations in the Ohio lawsuit and the instant action, the Court finds that plaintiffs are correct that dismissal would not be appropriate on duplicity grounds because plaintiff is not asserting the same

---

[5] Defendants' erroneous statement of the applicable legal rule finds its origins in a summary by the D.C. Circuit in Walton v. Eaton Corp., 563 F.2d 66, 70 (D.C. Cir. 1977) of the Supreme Court's ruling in The Haytian Republic, 154 U.S. 118, 124 (1894).  An examination of the Supreme Court's ruling in Haytian makes it perfectly clear that in order for a second lawsuit to be dismissed, it must involve the assertion of the same rights as those made in a previously filed lawsuit. The Supreme Court stated as follows:  "The elementary principle which governs the availability of the plea of 'other suit pending' was thus stated in Watson v. Jones, 13 Wall. 679, 715: 'When the pendency of such a suit is set up to defeat another, the case must be the same. There must be the same parties, or, at least, such as represent the same interest, there must be the same rights asserted and the same relief prayed for.  This relief must be founded on the same facts, and the title, or essential basis of relief sought, must be the same.'"

Even on the basis of Defendants' misstatement of the applicable legal rule, Wright II should not be dismissed since Wright I and II do not deal with the same "subject matter."

claims in two separate actions"), rev'd on other grounds, 315 F.3d 338 (2003).  Wright II involves no such duplication.

Defendants' cases, when examined, reinforce this statement of the law – in sharp contrast to Defendants' misstatement of the rule.  Thus, in Chinn v. Giant Food, Inc., 100 F. Supp. 2d 331 (D. Md. 2000), the district court stated "[t]he cases are legion that a party may not institute new actions duplicating existing litigation."  Id. at 333.  In Zerilli v. The Evening News, Assoc., 628 F.2d 217 (D.C. Cir. 1980), the Court noted that the district court Judge had dismissed a claim on the grounds that the "count is precisely the same as a count pending in a related case."  Id. at 222.   And in Walton v. Eaton Corp., 563 F.2d 66, 70 (D.C. Cir. 1977), the Third Circuit noted that a second complaint was "[i]n almost all respects . . . indistinguishable from [the] first."  Id. at 70.

### B.    Wright I and II Are Not Duplicative

Even a cursory examination of the complaints shows that Wright II does not duplicate the claims in Wright I.  As summarized above, in Wright I, Plaintiff seeks redress against Defendants for being wrongfully ousted from CRA Urban, for being deprived of the economic benefit of its project management contracts (of which the Gage School Project was only one), and for the wrongful dissolution of CRA Urban.  In contrast, in Wright II, Plaintiff seeks redress against Defendants because they breached her contractual rights with respect to the Venture – an LLC which the parties used to make an equity investment in a specific project – the Gage School Project. In sum, in Wright I and II, Plaintiff asserts different rights with respect to different LLCs in which

the parties have a different ownership structure and which involve different applicable state laws.[6]

Plainly, there is some factual overlap between the two actions.  The parties are the same. Both actions involve the Gage School Project – although in Wright I, this is only one aspect of Plaintiff's claims flowing from her wrongful ouster from CRA Urban. And both cases involve Defendants who have deliberately set about to deprive Plaintiff of her rights – although, as noted, different legal rights are at stake in each case. But limited factual overlap  is not the same as identity of legal claims.  Indeed, Plaintiff brought the overlap to the attention of the Court when we advised the Court in filing Wright II that it is related case to Wright I because "there are common issues of fact."  Local Rule 40.5 was devised to address situations like this in order to avoid the risks of inconsistent results, duplicative proceedings, and other inefficiencies.[7]

Defendants contend that Plaintiff should have proceeded by way of Rule 15 and sought to amend or supplement her complaint in Wright I.  While Rule 15(a) and (d) would have permitted Wright to pursue claims asserted in Wright II by way of amendment or supplementation in Wright I, Defendants cite no authority requiring that she follow that route.

---

[6] As a D.C. LLC, the rights of the parties in this action will be governed by D.C. law.  In Wright I, the rights of the parties will be governed by Virginia law.  Mem. at 13-14.

[7] We also note that in cases involving concerns about "claim splitting" (i.e., splitting a single cause of action into two lawsuits), this Circuit "deal[s] with this problem not bluntly, by a general prohibition against fragmented litigation over matters arising out of a single controversy; rather, we rely upon the more discriminating principles of issue and claim preclusion.  [Citation omitted.]  Where appropriate, devices such as transfer or consolidation  may also be usefully employed." New York Shipping Assoc. v. Federal Maritime Commission, 854 F.2d 1338, 1352 (D.C. Cir. 1988).  Thus, even in cases where there truly are duplication concerns, there are practical measures available and utilized by the court to avoid problems.

### C.    Plaintiff Has Not Engaged in Vexatious Litigation

Defendants also argue that Plaintiff has engaged in "a continuous pattern of groundless and vexatious litigation," justifying an order barring her from further filings in this Court without leave.  Mot. at 6-8.   This argument fails to pass muster for at least two reasons:

First, Plaintiff has not filed groundless litigation.  This Court's extensive Memorandum Opinion in Wright I, dated July 19, 2005, granting Plaintiff's motion to amend and supplement her complaint in Wright I and rejecting all of Defendants' challenges makes this plain.

Second, there is simply no comparison between Plaintiff's pursuit of her legal rights and the actions at issue in the cases on which Defendants' rely.  Thus, in Kaempfer v. Brown, 684 F. Supp. 319 (D.D.C. 1988) and 1250 24th Street Associates v. Brown, 684 F. Supp. 326 (D.D.C. 1988), the defendants had engaged in a "war of attrition," filed a "myriad of motions" most of which "lacked merit" and the purpose of which was not to "promote their legal rights" but to make it difficult for plaintiffs to pursue a real estate project,  litigated and relitigated "an expanse of issues" in bankruptcy court, federal court, D.C. Superior Court, including two suits asserting claims that had already been decided in federal district court, in arbitration, in the public policy arena, and before the Zoning Administrator.[8]  As we will demonstrate in discovery, Plaintiff's two lawsuits are built on

---

[8] Plaintiff did, however, prematurely serve a document subpoena on HUI, the Investor in the Gage School Project, seeking documents relating to the Project that Defendants have refused to provide.  The subpoena was sent in error, and not, as Defendants suggest, to "sabotage" the Gage School Project.  As a substantial investor in the Project, Plaintiff has every reason to want the Project to succeed.  Plaintiff withdrew her subpoena on the same day that Defendants advised that it was premature.

solid ground.  In the meantime, there is not a shred of support for Defendants' contention

that Plaintiff's two lawsuits are groundless or vexatious.

## II.     CRA URBAN VENTURE I IS NOT AN INDISPENSABLE PARTY

### A.     The Legal Standard

Defendants argue that the Venture is an indispensable party.  Defendants'

arguments are largely a reprise of arguments they made in Wright I with respect to CRA

Urban Venture.  While Wright II deals with a different LLC – the Venture – the legal

principles applied in the Court's Memorandum Opinion in Wright I apply with equal

force to the instant case and mandate a rejection of Defendant's attack.  In the interests of

thoroughness, however, we review the applicable law and analysis.

Fed. R. Civ. P. 19(a) sets forth the following legal standard for determining when

parties are indispensable in a federal court action:

> A person who is subject to service of process and whose joinder will not
> deprive the court of jurisdiction over the subject matter of the action shall
> be joined as a party in the action if (1) in the person's absence complete
> relief cannot be accorded among those already parties, or (2) the person
> claims an interest relating to the subject of the action and is so situated that
> the disposition of the action in the person's absence may (i) as a practical
> matter impair or impede the person's ability to protect that interest or (ii)
> leave any of the persons already parties subject to a substantial risk of
> incurring double, multiple, or otherwise inconsistent obligations by reason
> of the claimed interest.

If the Court determines that a person is indispensable, but that to add it because

joinder would defeat subject matter jurisdiction, then the Court must apply Rule 19(b) to

determine whether "in equity and good conscience"[9] the action should be allowed to

---

[9] As we noted in Wright I, considerations of "good conscience" have resulted in very few cases being
dismissed due to the absence of nondiverse parties.  Thus, in Jaser v. New York Prop. Ins. Underwriting
Ass'n, 815 F.2d 240 (2d Cir. 1987), the Second Circuit stated: "The phrase 'good conscience' implies a
careful and constructive consideration of those parties that are necessary to the litigation.  As a
consequence, very few cases should be terminated due to the absence of nondiverse parties unless there has

proceed or be dismissed. The Federal Rules direct the court to apply a multi-factor test to decide this issue. Rule 19(b) states as follows:

> [T]he court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

If these factors cannot be properly applied at the pleading stage, then the court should "defer decision until the action [is] further advanced." Mem. at 8; Ilan-Gat Engineers, Inc., LTD. v. Antigua International Bank, 659 F.2d 234, 241 (D.C. Cir. 1981).[10]

## B.    Defendants' Arguments Don't Satisfy the Elements of Rule 19

Although Defendants invoke Rule 19, none of their arguments actually addresses the legal elements that must be satisfied in order to assess (1) whether the Venture is an indispensable party under Rule 19(a), and (2) if the Venture is an indispensable party, whether the equitable factors in Rule 19(b) require dismissal.

If we apply the legal framework mandated by Rule 19, it is readily apparent that there is simply no basis for dismissing this action. The Venture is not an indispensable

---

been a reasoned determination that their nonjoinder makes just resolution of the action impossible." Id. at 242 (emphasis added).

[10] Defendants statement of the legal standards makes no reference to the specific elements of Rule 19. Instead, they rely on Am. Fed'n of Gov't Employees v. Rumsfeld, 321 F.3d 139, 142 (D.C. Cir. 2003) for the proposition that Plaintiff must defend against their motion "by proving by a preponderance of the evidence that a Court has jurisdiction to hear her claims." Defendants' Mot. at 9. But that was a standing case, not a Rule 19 case. Moreover, in Rumsfeld, the court "'accepted as true all material allegations in the complaint.'" Id. at 142. Defendants also rely on Coalition for Underground Expansion v. Mineta, 333 F.3d 193 (D.C. Cir. 2003) for the proposition that the Court may "consider materials outside the pleadings" (Defendants' Mot. at 9), but then fail to point to any such evidence in support of their arguments.

party for the simple reason that all its members are already parties to this action.  This

Court applied this concept in Wright I with respect to CRA Urban when it stated "given

the small size of this LLC and the fact that all shareholders are currently parties to this

action, it is hard to imagine that as a 'practical matter' the technical presence of CRA

Urban, LLC as a defendant is necessary to protect its interests."  Mem. at 9-10; see also,

Omnioffices, Inc. v. Omnioffices, Inc., 2001 U.S. Dist. LEXIS 22421 *23 (D.D.C. Sept.

12, 2001) (a non-party corporation is not indispensable where its interests were

"identically aligned" with the interest of those who were already parties to the case)

(citing Joyce v. Cuccia, 1997 Del. Ch. LEXIS 71 (Del. Ch. 1997).[11]

        Further, the equitable considerations of Rule 19(b) do not mandate dismissal.

Any judgment rendered in this action will not be prejudicial to the Venture given that all

of the key participants are present and thus the interests of the Venture are fully

represented. Moreover, if any concerns develop in the course of the litigation, this Court

can shape protective provisions that will avoid any prejudice.  Certainly any judgment

rendered herein in the Venture's absence will be adequate because the parties will be able

to identify and propose solutions for problems that involve the Venture.  And finally,

while if this case were dismissed, Plaintiff could refile it in D.C. Superior Court, she

---

[11] Plaintiff has alleged in Paragraph 16 of the Complaint that, on information and belief, Herman and May transferred part of their Class B interest to members of their family.  Defendants' counsel subsequently represented that this allegation is untrue and have served a motion claiming Rule 11 sanctions if this allegation is not withdrawn.  Plaintiff will seek to amend her complaint to conform the allegations to the evidence, which is that she was told by Herman and May in the Fall of 2004 that they intended to transfer part of their Class B interest to members of their family, and believed that they had, in fact, effectuated the transfer.  Whether or not the transfer actually occurred is an issue that will have to be pursued in discovery. In any event, if Herman's and May's family members did, in fact, receive an interest the Venture, Herman's and May's participation in the litigation will avoid any impairment of such family member interests.

would lose the ability and efficiencies involved in having this case litigated with a related case – Wright I.[12]

None of Defendants' arguments satisfies the requirements of Rule 19.  First, Defendants argue that Wright cannot recover unless she "asserts the rights of the various entities through which she claims harm."  Defendants' Mot., at 10.  But this is a standing argument that says nothing about whether the Venture is a necessary party.  Rather, this contention goes to the question of whether Wright has a direct right of action or must sue derivatively.  We address this point in Section III.B below.

Next, Defendants argue that Plaintiff has "no right to Urban Venture's interest in Gage School Holdings LLC or the foregoing company's interest in Gage School LLC." Defendants' Mot. at p.11.   Here again, Defendants' argument has nothing to do with whether the Venture is an indispensable party. Additionally, Plaintiff only seeks enforcement of her rights under the Venture's Operating Agreement.

Defendants' next attack also misses the mark.  They contend that Herman and May do not owe Plaintiff any duties because their obligation is to "discharge their duties to the company."  Defendants' Mot.at 11.  This argument has nothing to do with Rule 19. It is based on the erroneous assumption that Herman and May are immune from liability because they have elected to use the vehicle of an LLC to conduct their business.[13]

---

[12]  We note that since CRA Urban has filed suit against Plaintiff in D.C. Superior Court ("Wright III"), Plaintiff, in theory, could refile this action in that court with a request that the actions be heard by the same Judge.  However, Plaintiff will soon be filing a motion seeking a dismissal of that action on several grounds, including the pendency of Wright I.

[13] This argument was squarely rejected by this Court in its Opinion Memorandum, dated July 19, 2005, in Wright I.  In Wright I, as here, Defendants argued that they were immune from liability.  See, Defendants' Mem. of Points and Authorities, dated March 28, 2005, pp. 8-9.  This Court ruled as follows:

> [T]he Virginia LLC Act "at least implicitly recognizes circumstances in which members
> of a limited liability company may seek to sue managers and/or other members of a

Defendants next argue that the Venture's absence threatens its "contractual interests in the Gage School Project," implicates the rights and actions of others, including the Investor, and seeks to "rewrite the operating agreement."  Defendants' Mot. at 12-13.  As noted above, Herman's and May's participation in this action, and the small, closely held nature of the Venture addresses any concerns about their interests in the Gage School Project. As to other non-parties, Defendants do not substantiate their claim they are indispensable, nor do any of such parties seek to be added as an indispensable party.  And insofar as the Venture's Operating Agreement is concerned, the participation of the three signatories to the Agreement in this action addresses this issue.[14]

---

> limited liability company individually.  Va. Code § 13.1-1025(A) (limiting the monetary amount for which members or managers of an LLC may be held liable "[i]n any proceeding brought by or in the right of a limited liability company *or brought by or on behalf of members* of the limited liability company").

Mem. at. 18 (emphasis in the original).  As a D.C. LLC, the Venture is governed by the District of Columbia's LLC Act, which, like the Virginia statute, clearly recognizes that a member may sue another member.  D.C. Code § 29-1020(a) states as follows:

> The liability of a manager or member in any proceeding brought by or in the right of a limited liability company or brought by or on behalf of members of the limited liability company may be limited or eliminated in the articles of organization or an operating agreement, except if the manager or member engaged in willful misconduct.  (Emphasis added.)

The Venture's Operating Agreement does not limit the liability of members to one another.

[14] Defendants' reliance on Bates v. Cekada, 130 F.R.D. 52 (E.D. Va. 1990) erroneously assumes that Plaintiff is asking the Court to "rewrite" the Venture's Operating Agreement.  Plaintiff seeks the enforcement of her rights by applying, not rewriting, the terms of the Operating Agreement.  In Bates, the district court ruled that a corporation was an indispensable party because the plaintiffs sought to change the rules set forth in the articles for selecting directors.  Id. at 58.

Defendants also argue that CRA Urban, LLC is a necessary party, but fail to make explain why.  Defendants' Mot. at 13.  Since all of the members of CRA Urban are parties to this action, there is no basis for Defendants' assertion.

Plainly, Defendants have failed to satisfy the requirements of the Federal Rules of Civil Procedure for showing that CRA Urban is an indispensable party. It isn't, and this action may proceed without running afoul of Rule 19.

### III. THE COMPLAINT DOES NOT FAIL TO STATE A CLAIM

#### A. The Legal Standard

This Court set out the legal standard for analyzing a Rule 12(b)(6) motion in its Opinion Memorandum as follows:

> Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. [Citation omitted.] Thus, in resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of fact and law – as true and draw all reasonable inferences therefrom in the plaintiff's favor. [Citations omitted.] While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. [Citations omitted.]

Mem. at 11-12.

As we show below, Defendants' attacks on the complaint are without merit.

#### B. Plaintiff Has a Direct Right of Action

Defendants argue that Plaintiff does not have direct right of action under the Venture's Operating Agreement, and that she has asserts "nothing more than charges that the majority members of Urban Venture 'did not follow fair procedures in deciding to terminate [her alleged] employment' and as such are obligations and duties that are owed, if at all, by Urban Venture to Plaintiff." Defendants' Mot. at 15 (citing <u>Berman</u> v. <u>Physical Medicine Associates, Limited</u>, 225 F.3d 429, 433 (4th Cir. 2000).

We have addressed the issue of personal liability above, and focus here on Defendants' contention that Plaintiff does not have a direct right of action. As a threshold matter, it should be noted that Defendants' characterization of the allegations in the instant action as an "employment dispute" is a gross mischaracterization of the facts. As the complaint and its attachments make perfectly clear, Plaintiff is an equity investor and member of the Venture. This case pertains to Plaintiff's legal rights as a member of the Venture, including her contractual rights under the Venture's Operating Agreement.

Further, Plaintiff is not seeking to enforce rights that belong to the Venture, which would require a derivative action. Rather, her claims are based on rights that are granted to members of the Venture pursuant to its Operating Agreement. As this Court noted in rejected Defendants' Rule 12(b)(6) attack in Wright I, plaintiff is alleging "individual injuries to her, and not corporate injuries". Mem. at 17; see also, Sandra K. Miller, "What Buy-out Rights, Fiduciary Duties, and Dissolution Remedies Should Apply In The Case of The Minority Owner Of A Limited Liability Company?" 38 Harv. J.On Legis. 413, 451-53 (Summer 2001) ("The distinction between a direct action and a derivative action turns on whether the injury alleged is one to the corporation or to the shareholder individually. . . . A direct action should not be barred in an LLC, particularly where it would be the most efficient manner of resolving the dispute").

Defendants fail to explain why Plaintiff's Operating Agreement-based claims aren't legally cognizable claims. Plaintiff seeks redress for Herman's and May's violation of her contractual rights. In interpreting her rights, the Venture's Operating Agreements must be interpreted as a contract. Arbor Place v. Encore Opportunity Fund,

2002 Del. Ch. LEXIS 102 at *6-7 (Del. Ch. Jan. 29, 2002) ("It is undisputed that the LLC

Agreements are contracts to be interpreted like any other contract").

 The Venture's Operating Agreement states that it shall be "construed and

enforced in accordance with the laws of the District of Columbia." Complaint, Exhibit

"A" (Section 10.7).  The District of Columbia Court of Appeals has summarized the rules

of contract interpretation as follows:

> The first step in contract interpretation is determining what a reasonable
> person in the position of the parties would have thought the disputed
> language meant. . . .  The meaning must be ascertained in light of all of
> the circumstances surrounding the parties at the time the contract was
> made.  . . .The writing must be interpreted as a whole, giving a reasonable,
> lawful, and effective meaning to all its terms. . . .  If the document is
> facially unambiguous, its language should be relief upon as providing the
> best objective manifestation of the parties' intent. . . .  Extrinsic evidence
> of the parties' subjective intent may be resorted to only if the document is
> ambiguous. . . .  However, extrinsic evidence may be considered to
> determine the circumstances surrounding the making of the contract . . . so
> that it may be ascertained what a reasonable person in the position of the
> parties would have thought the words meant.

1010 Potomac Associates v. Grocery Manufacturers of America, Inc., 485 A.2d 199, 205-

06 (D.C. 1984).  Accordingly, even where a contract isn't ambiguous, extrinsic evidence

may be considered to determine what a "reasonable person in the position of the parties"

would think the contract means.

 Plaintiff's contract-based rights include the following:

 Right to Information.  The Venture's Operating Agreement clearly states that a

member has the right examine "the books and records of the Company."  Venture

Operating Agreement, Section 8.1(a).   Plaintiff has been denied this right.[15]

---

[15] The Delaware Chancery Court's decision in Arbor Place v. Encore Opportunity Fund, 2002 Del. Ch.
LEXIS 102 (Del. Ch. Jan. 29, 2002) is instructive on this point.  In that case, plaintiff sued for access to,
among other things, the tax returns of an LLC of which it was a member.  Plaintiff relied on a provision of
the LLC's operating agreement, which stated that members had the right to inspect and copy "[t]he books

Right to Participate in "Major Decisions."  The Operating Agreement states that "Major Decisions" require "the consent of a Class A majority."  Operating Agreement, Section 5.1(b).  Plaintiff, Herman and May have equal rights under the Operating Agreement as Class A members.  While Herman and May have the right to outvote Wright, and thereby secure a "majority," we think that a "reasonable person in the position of the parties," particularly in light of the small, closely-held nature of the company and the other business relationships its members conducted through CRA Urban, would interpret this provision to entitle all members to participate in the decision-making process.  1010 Potomac Associates, at 205.  At a minimum, extrinsic evidence needs to be pursued in discovery to assess the parties' understanding of how the Venture would function.

Right to Participate as a "Key Person."   As discussed above, under the DSA, which is incorporated into and a part of the Venture's Operating Agreement, Wright is a "Key Person" and entitled and required, along with Herman and May, to perform participate as a developer in the Project through CRA Urban.  Defendants have wrongfully excluded Plaintiff from participating in such development, and accordingly, she has a contract-based claim for breach of the Venture's Operating Agreement.

### C.    Plaintiff Has Pled a Valid Conspiracy Claim

Defendants contend that Plaintiff has failed to plead an underlying tort claim that supports her civil conspiracy claim.  Weishapl v. Sowers, 771 A.2d 1014, 1023-24 (D.C. 2001) (civil conspiracy requires an underlying tortious act).  While Plaintiff's case is

---

and records of the Company."  Id. at *6.  The court ruled that plaintiff was entitled to examine the LLC's tax returns noting that "[i]t is difficult to infer an implicit limitation on the availability of corporate documents in the face of this broad language."  Id. at *8.  We note that the court held that the term "has a common and well-understood definition," and then referred to Delaware statutes, including its LLC statute. However, the court's opinion does not hinge on these statutory references.

primarily a breach of contract case, she also alleges that Herman and May used "their positions . . . to advance their own personal interests vis-à-vis Wright (and, particularly, to advantage themselves financially at Wright's expense) without regard to their contractual and other duties and obligations to, among others, Wright."  Complaint at ¶ 23. The Complaint also alleges that Herman and May wrongfully caused CRA Urban to transfer the DSA for the Gage School Project to Urban Realty Advisors without obtaining the contractually-required approvals and violation of their duties to Wright under the Venture Operating Agreement.  Id. at ¶ 24.D

The D.C. LLC statute contemplates that member misconduct can be actionable. Section 29-1020 of the D.C. statute states than LLC's operating agreement cannot limit the liability of a manager or member who "engaged in willful misconduct."   The actions set forth above constitute acts of misconduct under the D.C. statute.  They also serve to satisfy the requirement in a civil conspiracy claim that the defendant engage in an underlying tortious act.

Accordingly, Plaintiff's civil conspiracy claim should be allowed to stand.

**<u>CONCLUSION</u>**

For all of the foregoing reasons, Defendants' motion to dismiss the Complaint

should be denied.


_____/s/_____
Stephen H. Marcus, Esq.
D.C. Bar No. 394419
Law Office of Stephen H. Marcus
1050 17th Street, N.W.
Suite 600
Washington, D.C.  20036

Ph:     202-776-0651
Fax:    202-331-7272
E-mail: shmarcus@att.net

<u>Counsel for Plaintiff</u>


August 1, 2005

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                            )
**JULIA E. WRIGHT**                         )
                                            )
        **Plaintiff,**                      )
                                            )
        **v.**                              )        **Civil Action No. 05-01179**
                                            )        **The Honorable Ricardo M. Urbina**
**WILLIAM N. HERMAN,**                      )
**ERIC T. MAY and URBAN**                   )
**REALTY ADVISORS, LLC**                    )
                                            )
        **Defendants.**                     )
_____)

## <u>ORDER</u>

### Denying Defendants' Motion To Dismiss The Complaint

Upon consideration of Defendants' Motion to Dismiss The Complaint, it is this __

day of August, 2005, hereby

**ORDERED** that the aforesaid motion is hereby **DENIED**.

**SO ORDERED.**


                        _____
                        RICARDO M. URBINA
                        United States District Judge

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 1, 2005, I served the following counsel with the foregoing Opposition to Defendants' Motion to Dismiss the Complaint by filing it on the U.S. District Court for the District of Columbia's Electronic Case Filing System:

> Roger C. Simmons, Esq.
> Adam H. Oppenheim, Esq.
> Gordon & Simmons
> 603-B West Patrick Street
> Frederick, MD  21701

_____/s/_____
Stephen H. Marcus