IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JULIA E. WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 1:05 cv 01179 |
| WILLIAM M. HERMAN, et al. ) | The Honorable Ricardo M. Urbina |
| ) | |
| Defendants. ) | |
| ) | |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants William N. Herman ("Herman"), Eric T. May ("May") and Urban Realty Advisors, LLC ("Urban Realty") (collectively "Defendants"), by their undersigned counsel, respectfully reply to the Opposition to Defendants' Motion to Dismiss the Complaint ("Opposition"), filed by Plaintiff Julia E. Wright ("Wright" and/or "Plaintiff").

### ANALYSIS

Plaintiff's Opposition fails to explain why she should be entitled to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendants. Once the Complaint's litany of unwarranted inferences and baseless accusations premised upon purported "information and belief" (and/or the absence of information disputing her parade of horribles) are stripped away, what is left is a sometime attorney, businessperson and investor who is attempting to wield the threat posed by the instant lawsuit to the hoped for eventual profit of CRA Urban Venture I LLC, as leverage in her efforts to extract substantial sums of monies from Herman and May, and to possibly reap double recovery from her claims in the civil action styled as *Wright v. Herman, et al.,* Case No. 1:05-cv-00324-RMU, U.S. District Court for the District of Columbia ("*Wright I*"), a case that subsumes the dealings of the foregoing LLC within

its all-encompassing partnership theory. Plaintiff believes that her fellow investors in a third-party limited liability company are required to continually invest their labor, sweat of the brow and personal assets – while risking any return on such investments – in order to vindicate Plaintiff's alleged "rights" inferred from an express written instrument, and other purported "rights" to "participate" in the daily work for the company.

Plaintiff's theories of liability are all implicitly premised upon a number of unsustainable assumptions. As a preliminary matter, none of her complaints plead facts that take any alleged act or action of the Defendants outside the scope of the business judgment rule. As CRA Urban Venture I LLC has a written operating agreement, there is no tautological allegation of oral partnership used to disregard the business organization as employed in Wright I. In this case, Wright purports to disregard the corporate form that she herself participated in organizing, without any basis to suggest that Herman or May were not exercising their reasonable business judgment in their capacities as members, managers and/or agents of the non-party business entity that is the ultimate party in interest here.

Essentially, Plaintiff assumes away any vestige of the corporate veil as between limited liability company members by alleging a litany of inferred personal "rights" in the business' operating agreement. Without the business judgment rule as a necessary predicate to bringing her individual claims premised upon alleged (and not express) rights in the operating agreement, the operating agreement becomes a corporate suicide pact.

I. **PLAINTIFF FAILS TO EXCUSE THE TACTICS THAT WARRANT THE STAYING OR DISMISSAL OF THIS LAWSUIT**.

   A. **PLAINTIFF'S IMPROPER COMMENCEMENT OF SECOND LAWSUIT IN THIS COURT TO CIRCUMVENT RULE 15 AND EFFICIENT DOCKET MANAGEMENT**.

   While the Complaint in the instant case might not technically "duplicate" Plaintiff's claims in her first case – there can be no doubt that the claims in Wright I subsume those in the second case. On its face, Plaintiff's theories in her first case, largely premised upon a purported partnership governing any and all business dealings between and among the individual parties to these cases necessarily include her alleged rights in and to the Venture. As defined in the *Wright I* Second Amended Complaint ("Wright I Compl."), the so-called "Enterprise Assets" at issue in that case undeniably include the entirety of the business of the Urban Venture. In Wright I, Plaintiff unmistakably alleges, *inter alia,* that the subject matter of the dispute – her alleged Enterprise Assets – include any and all contracts, opportunities "and other forms or types of business" entered into and/or pursued by Herman, Wright and May. Wright I Compl. ¶ 15. Absent yet another amendment in Wright I to her pleadings, Plaintiff's claims in Wright I duplicate those in this case, no matter how many pages of argument **in this case** attempt to create distinctions and carve outs from the interpretation of a pleading in a separate docket.

   Consequently, for the reasons set forth in Defendants' Motion, together with the Plaintiff's own allegations stated in the Wright I Complaint (filed while the instant morion is pending), this Court should dismiss the instant Complaint, or stay all further proceedings in this second action until the first is resolved.

   B. **PLAINTIFF FAILS TO EXPLAIN HER TACTICS AND PATTERN OF CONDUCT**.

   Defendants believe that a stay, dismissal and/or other relief is further warranted because this

Plaintiff is engaging in a pattern of vexatious litigation conduct that effectively interferes with the operations of a stranger to this litigation (Urban Venture) as tactical leverage in her quest to extract a windfall from the individual defendants. Plaintiff does little to justify her conduct. Her success under the liberal standards governing amendment in connection with the Court's July 19, 2005 Order in Wright I does not change the analysis.

Plaintiff fails to explain her tactics and conduct, whether it is the circumvention of Fed. R. Civ. P. 15(b) by her commencement of the above-captioned action, or the improper attempt to circumvent Rules 26(d) and (g) of the Federal Rules of Civil Procedure by signing, issuing and serving of a subpoena *duces tecum*, four days after filing the Complaint. Obviously, the "subpoena was sent in error" as Plaintiff admits in footnote 8; however, it is and was an error that impacted the non-party Urban Venture and its relationship with the entity identified as the "Investor" in the Complaint. While Defendants cannot ascertain whether and to what extent the Investor has been discouraged from further potential opportunities with Urban Venture, whether as the result of the foregoing tactical "error" or the wildly speculative (and false) allegations made by Plaintiff relating to the Investor (which the Investor is now apparently aware of), the impact on Urban Venture's business (and of course, the parties to this litigation) is hardly speculative.

Wright's assertion that she has "every reason to want the project to succeed" does not comport with the fact that she has in fact seriously interfered with Urban Venture's ability to ensure success. For example, in early June, Urban Venture was unable to secure an increase in loan funding solely due to Plaintiff's refusal to execute the necessary documents (notwithstanding the Operating Agreement's explicit statement that all Class A Members have the affirmative obligation to guaranty loan(s) if the Managing Member and majority members deem it necessary).

Consequently, Defendants respectfully ask this Court to consider additional appropriate measures, including, without limitation, an order barring Plaintiff from further filings in this Court without prior leave, and such other and further relief as justice may require.

## II. PLAINTIFF'S WHOLESALE RELIANCE ON THE COURT'S ORDER IN WRIGHT I FATALLY IGNORES THE NATURE OF HER ALLEGATIONS AND POTENTIAL IMPACT ON URBAN VENTURE – DISTINCT FROM ITS MEMBERS.

The analysis of this Complaint differs in important respects from those raised in connection with Wright I. Indeed, the very viability of Plaintiff's alleged "rights" to participate, for information, etc., depend on her allegations that she has rights arising from agreements between and among third parties such as the Investor and Howard University. *See e.g.* Opposition at 24 (alleging that the "DSA" agreement gave Plaintiff rights, even though she is not a party to it). Moreover, any assertion that there is a unity of interests *vis a vis* the entire Gage School Project as between Herman, May and Wright, is utterly at variance with the allegations in the Complaint. *See* Compl. ¶ 13 B-C, ¶ 14 (allegations pertaining to the co-ownership, equity and management roles of HUI, LLC (Investor), Urban Venture, and others).

Plaintiff assumes (for purposes of rescuing subject matter jurisdiction), that the limited liability company Urban Venture does not have a vital stake in what is in reality a fight over control (despite the absence of deadlock). If, as alleged by Plaintiff, non-party Urban Venture may be in default or breach with the Investor or Howard University, because the majority members of Urban Venture decided, in an exercise of their business judgment, to not have Ms. Wright participate in the day to day management of the Gage School project, Urban Venture must be allowed to protect its interests as against potentially prejudicial judicial findings.

Because Urban Venture is undeniably an ongoing business concern (in contrast to Plaintiff's

allegations relating to her other LLC), and the governance, financing, management and structure of Urban Venture is central to this case (as illustrated by the reliance upon the organizational and operating documents), the instant Complaint should be dismissed for lack of subject matter jurisdiction because complete relief cannot be had (or claims even stated) without naming that limited liability company as a party defendant, the joinder of which would destroy complete diversity. Plaintiff's reliance on the Court's July 19, 2005 Order in Wright I is misplaced because the Complaint, on its face, demonstrates that Urban Venture's Interests need protection, and that those interests would be prejudiced in its absence. Consequently, the Court should dismiss this complaint for lack of subject matter jurisdiction.

### III. PLAINTIFF FAILS TO STATE CLAIMS FOR VIOLATIONS OF PURPORTED RIGHTS TO INFORMATION OR PARTICIPATION.

Wright correctly admits on page 9 of her Opposition, that Herman and May have the authority to make Major Decisions, as defined in the Operating Agreement, as long as they act reasonably and in their best business judgment. This much is clear and unambiguous. Nevertheless, in an effort to create causes of action, Wright (an attorney) now claims that what she "would think the contract means" (Opposition at 23) should be employed to create her newfound right to participate. Despite Defendants' challenge to Plaintiff's attempt to state claims by "alleging" substantive provisions into a written agreement attached to the Complaint, Plaintiff fails to present any authority relevant to such a commercially untenable proposition. People enter into contracts specifically to avoid this type of runaway uncertainty.

**IV.    EVEN IF SHE STATES CLAIMS FOR ALLEGED CONTRACTUAL BREACHES, THERE IS NO UNDERLYING TORT NECESSARY TO SUPPORT CONSPIRACY CLAIMS AND, IN ANY EVENT, CONSPIRACY CLAIMS ARE BARRED BECAUSE URBAN REALTY CANNOT CONSPIRE WITH ITS AGENTS HERMAN AND MAY**.

Plaintiff utterly fails to identify any actionable tort in her breach of contract claims arising from the Urban Venture Operating Agreement and provisions "alleged" to be included therein. Nor does she present any authority that permits her to maintain an action for conspiracy to breach contract provisions. Consequently, these claims must be dismissed.

In addition, the intracorporate conspiracy doctrine requires that the conspiracy count be dismissed. A civil conspiracy is not legally possible where, as here, an entity (Urban Realty) and its alleged co-conspirators (Herman and May) are not separate entities, but, rather, stand in a principal-agent relationship with the entity. *See Executive Sandwich Shoppe, Inc. v. Carr Realty Corporation*, 749 A.2d 724, 739 (D.C. 2000) ("The intracorporate conspiracy doctrine holds that ... a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."), *citing McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir.2000).

Because Plaintiff has set forth no authority to explain how Herman and May could legally conspire with an entity they are agents of, or otherwise conspire when there is no underlying tort, her civil conspiracy claims must be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed.

> Respectfully submitted,
>
> /s/ Roger C. Simmons
> Roger C. Simmons (D.C. Bar No. 12195)
> Adam H. Oppenheim (D.C. Bar No. 462581)
> Gordon & Simmons, LLC
> 603-B West Patrick Street
> Frederick, Maryland 21701
> (301) 662-9122 (Tel.)
> (301) 698-0392 (Fax)
> Counsel for Defendants

Dated: August 18, 2005

**CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY that on August 18, 2005, the requirement of a certificate of service was satisfied by the automatic notice of filing sent by the CM/ECF software to the opposing counsel of record identified below.

Stephen H. Marcus, Esq.
1050 17th Street, N.W.
Suite 600
Washington, D.C. 20036

Counsel for Plaintiff


                                        /s/ Roger C. Simmons

Z:\CRA Urban\ReplyMotionDismissAction1179.wpd